1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

GERARDO PEREZ,

      Plaintiff,

     v.

SANTA CRUZ, CITY OF, et al.,

      Defendants.

Case No. 15-cv-02527-BLF

**ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

[Re: ECF 42]

Plaintiff Gerardo Perez ("Perez") brought this action under 42 U.S.C. § 1983 against the City of Santa Cruz (the "City") and four Santa Cruz police officers ("Officer Defendants") (together with the City, "Defendants") following an incident that resulted in Perez's arrest in August 2013. The Complaint alleges four causes of action against all Defendants. *See generally* Complaint, ECF 1 ("Compl."). The City and the Officer Defendants moved for summary judgment on all claims. *See generally* Motion for Summary Judgment ("Mot."), ECF 42. In his opposition, Perez dismissed all four causes of action against the City. *See* Opp'n at 3, ECF 47. He also dismissed the third and fourth causes of action in their entirety. *Id.* Thus, the Court considers only whether the Officer Defendants are entitled to summary judgment on Perez's remaining claims: (1) the First Cause of Action for false arrest in violation of Perez's Fourth Amendment rights pursuant to § 1983; and (2) the Second Cause of Action for violation of the Fourteenth Amendment pursuant to § 1983.

The Court has considered the briefing, the admissible evidence, and the argument presented at the hearing on November 16, 2017. For the reasons discussed below, Defendants' motion for summary judgment is GRANTED.

## I.  BACKGROUND[1]

At the time of the relevant events, Perez was employed as a police officer by the Los Angeles Police Department ("LAPD"). On August 2, 2013, Perez was off-duty and drove from Los Angeles to Santa Cruz to visit his brother, Miguel Perez ("Miguel"). *See* Decl. of Patrick McNicholas ISO Opp'n ("McNicholas Decl.") Exh. 5 ("Perez Depo.") 32:2-16; 37:6-8; 40:7-13, ECF 47-6. Perez brought with him his LAPD-issued handgun—a Glock model 22—but Perez did not bring a holster or other container for the service weapon. Perez Depo. 36:24-25 (testifying that he brought "[j]ust the magazine, the rounds, the gun itself.") As soon as Perez arrived in Santa Cruz, he went out to dinner with Miguel, Miguel's boyfriend Idalberto Borjas ("Borjas") as well as Perez's girlfriend Lizette Chaidez ("Chaidez"), all of whom are Hispanic. *Id.* 32:2-3; 40:7-13.

Later in the night, Perez recalls that he was walking with Miguel, Borjas and Chaidez on Pacific Avenue in downtown Santa Cruz when they saw a white male who was with two white females across the street, all of whom appeared to be about college-age. *Id.* 60:21-61:1. The man began shouting homophobic remarks at Miguel and Borjas, who are openly gay and were holding hands as they walked. *Id.* 63:3-14. Perez recalls saying "let's go home," and telling his brother to "just keep walking." *Id.* 63:15-23. Miguel eventually turned and asked the man who was shouting the offensive remarks: "What's wrong with you? What's your problem?" *Id.* 63:24-25.

According to Perez, he heard the sound of running, and the next thing he saw was the white man assaulting Miguel in the middle of the street. *Id.* 65:5-23. Perez testified at his deposition that he attempted to break up the fight. *Id.* At some point during the altercation, Perez's firearm fell out of his waistband onto the sidewalk. *Id.* 71:9-22. Another individual, Derrick Griggs ("Griggs") was also present on Pacific Avenue and witnessed the altercation, including Perez's firearm falling to the ground. *Id.* 24:1-3. Griggs called 911 to report the fight

---

[1] The facts set forth in this section are merely a summary of the facts and do not represent all facts, disputed or otherwise. Additionally, the facts are undisputed unless otherwise noted.

and the presence of a gun to the police. *See* Declaration of Mark Eveleth ISO Mot. ("Eveleth Decl.") ¶ 4, ECF 43; *see also* Supplemental Declaration of Catherine Bronson, Ex. H ("911 Transcript"), ECF 55-1. Before the police arrived, Perez and his group left the scene of the altercation and walked to Miguel's house nearby at 232 River Street. *See* Perez Depo. 218:7-15.

At approximately 1:55 a.m. on August 3, 2013, Sergeant Mark Eveleth received a radio call informing him of a fight between three Hispanic males and a white male on Pacific Avenue, and that one of the Hispanic males had a firearm. *See* McNicholas Decl. Exh. 1 ("Eveleth Depo.") 15:2-7; 17:16-18:4, ECF 47-2. Sergeant Eveleth arrived at the scene, where he saw Griggs standing on the corner of Pacific Avenue and River Street. *See* Eveleth Decl. ¶ 4. Griggs reported to Sergeant Eveleth that the suspects involved in the fight were traveling northbound on River Street, and that the Hispanic male wearing a white t-shirt had a gun. *Id.* ¶ 5.

Sergeant Eveleth drove north on River Street until he saw four individuals standing in or near the yard at 232 River Street. *Id.* ¶ 6. The Parties dispute exactly where Perez was standing at this point: Perez testified that he was standing in the front yard, inside of the white fence surrounding the unit, which was not shared by people in other units of the residence. Perez Depo. 82:4-18. Eveleth declares that when he arrived, Perez was standing on the sidewalk at the open gate leading to the front yard of the property. Eveleth Decl. ¶ 6. Perez further testified that when he saw the police approach, he decided to "not make this difficult for the officers" and Perez stepped out of the gate onto the sidewalk. Perez Depo 83:7-84:24.

Eveleth noticed that Perez was wearing a white shirt and was bleeding from the mouth, which matched the description from Griggs regarding the Hispanic man with a gun who had been involved in a fight. *Id.* ¶ 7. Sergeant Eveleth got out of his vehicle and told the suspects not to move and to put their hands up, and all four of the individuals complied. *Id.* ¶ 7; Eveleth Depo. 30:4-23. Without being told to do so, and while he was outside of the fenced yard on the sidewalk, Perez turned away from Eveleth, went down on his knees, and laced his fingers behind his head. *Id.* 33:2-5; 37:4-25. Perez informed Sergeant Eveleth that he had a gun on his person, and that he was LAPD. *Id.* 38:5-39:10. Eveleth testified that Perez was cooperative during the encounter. *Id.* 39:5-10.

3

1    A few minutes later, Officers Dominic Guerrasio and Denise Cockrum arrived at the scene.

2  *Id*. 39:18-41:3.  Once they arrived, Sergeant Eveleth ordered Perez, who was still on his knees, to

3  move backwards on his knees toward the officers. *Id*.  Perez moved backwards approximately

4  eight feet on his knees with his hands behind his head. *Id*. 41:4-12.  Sergeant Eveleth noticed that

5  Perez had difficulty maintaining his balance as he ambulated backwards on his knees, which he

6  later concluded in his police report was a balance or coordination issue due to intoxication. *Id*.

7  73:14-18; 92:4-12.  Eveleth also testified that Perez was wearing shorts, and informed Sergeant

8  Eveleth that his knees hurt as he ambulated backwards. *Id*. 74:1-16.

9    Once Perez had reached the officers on his knees, one of the officers handcuffed Perez and

10  picked him up to bring him to his feet. *Id*. 41:22-42:19.  Eveleth testified that Perez was initially

11  detained for officer safety, and to determine whether Perez lawfully owned the handgun that he

12  admitted to having on him. Eveleth Decl. ¶ 10.  After Perez was handcuffed, a search of his person

13  revealed the loaded Glock model 22 tucked into the waistband of Perez's shorts, as well as his

14  LAPD identification and his cell phone. Eveleth Decl. ¶ 9.  At some point after conferring with the

15  other officers on the scene, Sergeant Eveleth arrested Perez for a violation of California Penal

16  Code § 647(f), a misdemeanor offense for being intoxicated in public. McNicholas Decl. Exh. 2

17  ("Guerrasio Depo.") 20:11-21:1, ECF 47-3.  Sergeant Eveleth then read Perez his Miranda rights,

18  and Perez indicated that he understood his rights but wanted to give Sergeant Eveleth his

19  statement regarding the altercation that had occurred earlier in the night. Eveleth Depo. 98:21-

20  100:12.

21    Within a day of the arrest, Sergeant Eveleth, Officer Guerrasio and Officer Cockrum

22  prepared a police report concerning the events described above. *See* Eveleth Depo. 74:9-16. The

23  report stated that Perez "displayed symptoms of alcoholic intoxication." *Id*. 98:1-8.  As discussed

24  further below, Perez takes issue with the conclusions in the police report that he argues differ

25  substantially from the officers' observations at the scene.  Perez further testified that after the

26  incident in Santa Cruz, he was "looked down on" by his direct supervisors at the LAPD, had no

27  chance of being promoted, and ultimately resigned as a police officer. Perez Depo. 107:8-24.

28    Perez filed this lawsuit on June 5, 2015. *See* Compl., ECF 1.  The Complaint asserts three

4

claims under 42 U.S.C. § 1983 against the City and Officer Defendants for deprivation of the right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment, the right to equal protection of the laws as guaranteed by the Fourteenth Amendment, and the right to be free from retaliation for exercising the right to petition the government, as guaranteed by the First Amendment. *See generally* Compl. The Complaint also includes a state law claim for intentional infliction of emotional distress against all Defendants.

Defendants moved for summary judgment on all claims. *See generally* Mot. In his opposition to the summary judgment motion, Perez voluntarily dismissed all four causes of action against the City of Santa Cruz. *See* Opp'n at 3. In addition, Perez entirely dismissed his third cause of action for a violation of his First Amendment rights, as well as his fourth cause of action for intentional infliction of emotional distress against all Defendants. *Id.* Therefore, Defendants' motion for summary judgment is GRANTED with respect to all claims against the City, as well as the third and fourth causes of action against the Officer Defendants.

The only claims that remain are Perez's first and second causes of action brought under § 1983 for violations of his rights secured by the Fourth and Fourteenth Amendments to the United States Constitution. For the reasons that follow, Defendants motion for summary judgment is GRANTED.

## II. LEGAL STANDARD

"A party is entitled to summary judgment if the 'movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248–49.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party

5

must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets its initial burden, the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Id.* at 1103. If the nonmoving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. "The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor." *City of Pomona*, 750 F.3d at 1049. However, "the 'mere existence of a scintilla of evidence in support of the plaintiff's position'" is insufficient to defeat a motion for summary judgment. *Id.* (quoting *Anderson*, 477 U.S. 242, 252 (1986)). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.    DISCUSSION

Perez seeks to focus this case on the Officer Defendants' "core actionable conduct" as alleged in his two claims pursuant to § 1983 against the Officer Defendants for violations of the Fourth and Fourteenth Amendments. *See* Opp'n at 3. The Court addresses Defendants' motion for summary judgment on each claim in turn.

### A.    Unlawful Arrest

Perez's first cause of action is against the Officer Defendants for violating his Fourth Amendment right to be free from an unlawful arrest. *See* Compl. ¶¶ 46-51. Although the Complaint originally alleged that Perez had also been detained without reasonable suspicion, Perez conceded at the hearing on November 16, 2017 that he is no longer pursuing a Fourth Amendment claim based on an unlawful detention. Defendants' motion for summary judgment is therefore GRANTED as to Perez's claim for unlawful detention against all of the Officer Defendants.

The absence of probable cause is a necessary element of a § 1983 false arrest claim.

*Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015). The Ninth Circuit has long held that "probable cause exists when under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." *Grant v. City of Long Beach*, 315 F.3d 1081, 1085 (9th Cir. 2002) (internal citation and quotation omitted). In evaluating qualified immunity, the Court makes an objective determination, "focusing on whether a reasonable officer could have believed that probable cause existed to arrest the plaintiff." *Mendocino Environmental Center v. Mendocino County*, 14 F.3d 457, 462 (9th Cir. 1994); *see also Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442–43 (9th Cir. 1991) ("The doctrine of qualified immunity does not require that probable cause to arrest exist."). The Ninth Circuit has held that "the defendant's knowledge is relevant since the objective analysis is focused on a reasonable officer confronted with the facts and circumstances actually known to the officer." *Id*.

Defendants move for summary judgment on the unlawful arrest claim, arguing that it is undisputed that Officers Forbus, Cockrum, and Guerrasio did not arrest Perez and cannot be liable for a Fourth Amendment violation. Moreover, Defendants argue that it is undisputed that Sergeant Eveleth had probable cause to arrest Perez for either public intoxication under California Penal Code § 647(f), battery under § 242, or engaging in a public fight under § 415(1). Defendants further assert that Sergeant Eveleth is shielded by qualified immunity on the unlawful arrest claim. Perez argues that there is ample evidence in the record to create a triable issue of fact as to whether the Officer Defendants lacked probable cause to arrest him.

### 1. Officers Forbus, Cockrum, and Guerrasio

At the outset, Defendants argue that Officers Forbus, Cockrum, and Guerrasio played no role in the decision to arrest Perez, and thus summary judgment is appropriate as to these officers on the Fourth Amendment claim. Perez does not contest this assertion in his opposition, but he argued at the hearing that Officers Guerrasio, Forbus, and Cockrum should not be dismissed because the decision to arrest Perez was a "group consensus." *See* Guerrasio Depo. 20:15-21:1. Guerrasio testified at his deposition that there were numerous suspects and numerous officers at the scene, and "different officers had different parts of the investigation that they focused on. So,

for example, I never spoke with Mr. Perez. He wasn't part of what I investigated." *Id*. 18:11-18. At some point at the end of the investigation and prior to the arrest, Sergeant Eveleth "brought everyone together" and "we developed a consensus as to how to proceed." *Id*. 18:19-19:4. During the meeting, Sergeant Eveleth confirmed with the various officers that each of the four suspects was exhibiting signs of intoxication. *Id*. However, Guerrasio testified that Guerrasio himself did not personally evaluate any of the specific people who were detained, including Perez, because the majority of Guerrasio's involvement in the case was "dealing with the witness." *Id*. 19:5-10.

In arguing that Officer Guerrasio can be held liable for false arrest, Perez completely ignores Guerrasio's clear testimony that he did not provide any input during the group meeting as to whether Perez was intoxicated or whether Perez should be arrested. *Id*. 19:13-22. Guerrasio further confirms his own impression that Sergeant Eveleth made the decision to arrest Perez. *Id*. 20:11-14. Considering Guerrasio's testimony as a whole, rather than selective quotations from it, no reasonable jury could find him liable for an unlawful arrest claim. *See, e.g.*, *Browning v. Pend Oreille Cty. Sheriff's Dep't*, 442 F. App'x 310, 312 (holding that responding officers were "entitled to summary judgment because they…did not participate in the arrest.") (citing *Hopkins v. Bonvicino*, 573 F.3d 752, 774 (9th Cir. 2009)).

As for Officer Cockrum, her deposition testimony makes clear that she responded to the scene as a "cover officer" to provide backup, and her role in the investigation was to interview Perez's girlfriend, Chaidez. *See* McNicholas Decl. Exh. 3 ("Cockrum Depo.") 14:13-14, ECF 47-4. Cockrum testified that she did not speak to Perez. *Id*. 14:21-25. At his deposition, Perez recalled only that Cockrum may have been a "transporting officer" but he could not recall any specific role that she played in the events. *See* Perez Depo. 219:4-10. Based on this evidence, no reasonable jury could find Officer Cockrum liable for false arrest.

There is even less evidence in the record to raise a triable issue of fact with respect to Officer Forbus' involvement in the decision to arrest Perez. *See generally* McNicholas Decl. Exh. 4 ("Forbus Depo."), ECF 47-5. When pressed at the hearing, Perez did not point to any evidence of involvement in the arrest by Cockrum or Forbus, but he reiterated that summary judgment should be denied based on his theory that the arrest was made by a "group consensus." Yet there

is no evidence in the record of a single statement by Cockrum or Forbus during the group meeting regarding their observations of Perez or whether Perez should be arrested.

Even viewing the evidence in the light most favorable to Perez, the Court concludes that simply because a group meeting took place prior to Perez's arrest where the Sergeant checked with other officers on the scene before making the decision to arrest Perez, does not raise a triable issue of fact with respect to Officers Guerrasio, Cockrum, and Forbus on the unlawful arrest claim. To hold otherwise would subject any officer who participated in a police huddle during an investigation to § 1983 liability for decisions made by other officers in the group.

Therefore, it is undisputed that Sergeant Eveleth made the decision to arrest Perez for a violation of § 647(f). In fact, Perez himself testified that he could not recall what role the other officers played in his arrest. *See* Perez Depo. 218:16-219:25. Because none of the evidence in the record raises any genuine dispute of material fact with respect to Officers Guerrasio, Cockrum, and Forbus on the Fourth Amendment claim, the Court GRANTS Defendants' motion for summary judgment as to the first cause of action against these officers.

### 2. Sergeant Eveleth

Defendants move for summary judgment on the false arrest claim against Sergeant Eveleth on the grounds that it is undisputed that Perez's arrest was supported by probable cause, and Sergeant Eveleth is shielded by qualified immunity. *See* Mot. at 13.[2] The Court acknowledges that at the hearing on Defendants' motion for summary judgment, the Court provided a tentative indication that it was likely to deny the motion on the unlawful arrest claim against Sergeant Eveleth and therefore this case might proceed to trial. Defendants urged the Court to reexamine Eveleth's qualified immunity defense. In response, Perez argued that the Court should consider the fact that Griggs, the witness who formed part of Eveleth's probable cause determination, was

---

[2] Defendants raise the "community caretaking" exception to the probable cause requirement for the first time in their reply brief. Arguments raised for the first time in a reply brief need not be considered, as Perez has not had a fair opportunity to address this argument. *See Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 846 (9th Cir. 1976) ("New material does not belong in a reply brief. . . . Certainly the use of new material in a reply brief transgresses against the canons of fair forensics.")

also heavily intoxicated and unreliable at the time he called 911 to report the fight involving Perez.

After the hearing, the Court reviewed the briefing on Sergeant Eveleth's assertion of qualified immunity on the unlawful arrest claim and recognized that Defendants' potentially dispositive arguments were not fully addressed by Perez, in part because of the Court's indication at the hearing that the claim was likely to survive. Thus, the Court ordered supplemental briefing and provided Perez with an opportunity to respond to Defendants' arguments that in addition to the crime that Perez was actually arrested for, probable cause also existed to arrest Perez for battery (California Penal Code § 242) and engaging in a public fight (California Penal Code § 415(1)). *See* ECF 57. Each party submitted a supplemental brief addressing the qualified immunity inquiry with respect to these statutes. *See* ECF 58, 61.

The Court has reviewed the briefing, evidence, and relevant law on the § 1983 claim for unlawful arrest against Sergeant Eveleth, and finds that he is entitled to qualified immunity. It is clear to the Court that there is no genuine issue of material fact regarding whether a constitutional violation occurred in this case because no reasonable jury could find that Sergeant Eveleth lacked probable cause to arrest Perez for public intoxication or fighting in a public place. Moreover, the alleged violation of a constitutional right was not clearly established at the time of the arrest because reasonable officers under the circumstances known to Sergeant Eveleth could disagree as to whether Perez had committed these crimes. For these reasons, explained further below, Defendants' motion for summary judgment on the unlawful arrest claim against Sergeant Eveleth is GRANTED.

### i. Legal Standard

Defendants assert that Sergeant Eveleth is entitled to qualified immunity on the unlawful arrest claim. In general, qualified immunity requires the Court to undergo a two-prong analysis to determine whether an official is entitled to qualified immunity: (1) whether the facts alleged show that the officer violated a constitutional right; and (2) if so, whether that right was clearly established at the time of the event. *See Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2080 (2011). The Court may consider the prongs in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Qualified immunity is an objective inquiry in that it "turns on the objective legal reasonableness of

the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987).

Perez asserts that Sergeant Eveleth violated his right to be free from unlawful arrest as secured by the Fourth Amendment to the U.S. Constitution. In order to defeat Sergeant Eveleth's qualified immunity defense, Perez must demonstrate that a constitutional violation occurred, and that the law was clearly established such that Sergeant Eveleth would have been on notice that his conduct was unlawful. As discussed above, it is well established that "an arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983." *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988) (citing *McKenzie v. Lamb*, 738 F.2d 1005, 1007 (9th Cir. 1984)). Defendants explain that Sergeant Eveleth is shielded by qualified immunity because Perez's arrest was supported by "either probable cause or arguable probable cause." Mot. at 3. Defendants rely on *Rosenbaum v. Washoe County*, where the Ninth Circuit held that even if an officer makes an arrest without probable cause, he may still be entitled to qualified immunity if it was "reasonably arguable" that probable cause to arrest existed. 663 F.3d 1071, 1076 (9th Cir. 2011). Thus, the Ninth Circuit summarized the two prongs of the qualified immunity analysis in the context of an unlawful arrest as: "(1) whether there was probable cause for the arrest; and (2) whether it is *reasonably arguable* that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." *Id*.

It is worth noting that in *Rosenbaum*, the Ninth Circuit actually reversed the district court's grant of summary judgment under the second prong of qualified immunity. *Id*. at 1079. In *Rosenbaum*, the plaintiff was standing outside of a fair with his children and selling promotional tickets for a profit although he had received them for free from a radio station. *Id*. at 1074. He was arrested for "abuse, neglect, or endangerment of a child" and for "obtaining money by false pretenses." *Id*. The charges were dropped, but the district court found that the defendant officer was entitled to qualified immunity because a statute that criminalized "collecting for benefit without authority,"—a crime that the plaintiff was not actually arrested for—was ambiguous and supported an officer's objectively reasonable belief that probable cause existed to arrest.

11

The Ninth Circuit reversed, making clear that "it is simply not a crime to sell tickets to a fair—even when the tickets were received for free." *Id.* at 1079. Thus, considering the facts in the light most favorable to the plaintiff in *Rosenbaum*, "no reasonable officer could believe that [the plaintiff's] conduct violated [the] statute," or in other words, "all reasonably competent officers would have agreed that [the plaintiff] was not committing a crime." *Id.* Despite *Rosenbaum*'s factual differences from the case at hand, its legal standard remains sound and has continued to be recognized as the controlling standard in this Circuit on the qualified immunity analysis for an unlawful arrest claim, and thus it guides this Court's inquiry. *See, e.g.*, *Dunlap v. Anchorage Police Dep't*, No. 16-35259, 2017 WL 4966816, at *1 (9th Cir. Oct. 27, 2017); *Fontana v. City of Auburn*, 679 F. App'x 613 (9th Cir. 2017); *Gillis v. City & Cty. of San Francisco*, 560 F. App'x 665, 667–68 (9th Cir. 2014).

The Court begins with the constitutional inquiry under the first prong of qualified immunity, which requires the Court to determine whether the undisputed evidence shows that Sergeant Eveleth had probable cause to arrest Perez. The Fourth Amendment secures the right to be free from "unreasonable searches and seizures." Whether a search or seizure is reasonable under the Fourth Amendment "is predominantly an objective inquiry." *Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2080 (2011) (quoting *City of Indianapolis v. Edmond,* 531 U.S. 32, 47 (2000)). A court must ask whether "the circumstances, viewed objectively, justify [the challenged] action." *Scott v. United States,* 436 U.S. 128, 138 (1978).

Specifically, a claim for unlawful arrest may arise under § 1983, "provided the arrest was without probable cause or other justification." *Dubner v. City & Cnty. of San Francisco,* 266 F.3d 959, 964 (9th Cir. 2001). "Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to cause a reasonably prudent person to believe that a crime has been committed." *Lassiter v. City of Bremerton,* 556 F.3d 1049, 1053 (9th Cir. 2009). Claims of unlawful arrest are analyzed according to the Fourth Amendment's objective reasonableness standard, "in light of the facts and circumstances confronting [the police officer], without regard to their underlying intent or motivation." *Dubner*, 266 F.3d at 966. "The determination whether there was probable cause is based upon the information the officer had at the time of making the

arrest. It is essential to avoid hindsight analysis, *i.e.*, to consider additional facts that became known only after the arrest was made." *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008) (citations omitted).

In addition, although an officer may not ignore exculpatory evidence that would negate a finding of probable cause, the officer may assess the credibility of evidence when determining whether to arrest a suspect. *See Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003); *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015). Therefore, a suspect's exculpatory statements to the arresting officer do not defeat probable cause. *Yousefian*, 779 F.3d at 1014. Additionally, once probable cause to arrest someone is established, a law enforcement officer is not "required by the Constitution to investigate independently every claim of innocence." *Broam*, 320 F.3d at 1032. Furthermore, "probable cause can well exist (and often does) even though ultimately, a jury is not persuaded that there is proof beyond a reasonable doubt." *Id.*

The Court's determination of whether Sergeant Eveleth had probable cause to arrest Perez involves both facts and law. "The facts are those that were known to the officer at the time of the arrest. The law is the criminal statute to which those facts apply." *Rosenbaum*, 663 F.3d at 1076. Here, Sergeant Eveleth arrested Perez for a violation of California Penal Code § 647(f), which makes it a misdemeanor for an individual to be (1) intoxicated; (2) in a public place; and (3) unable to exercise care for his safety or the safety of others. Cal. Pen. Code § 647(f). Although the public intoxication charge against Perez was eventually dismissed, he did not suffer a constitutional injury if probable cause existed at the time Sergeant Eveleth arrested him. *See Freeman v. City of Santa Ana,* 68 F.3d 1180, 1189 (9th Cir. 1995).

Defendants further assert that Sergeant Eveleth not only had probable cause to arrest Perez for public intoxication, but he also had probable cause to arrest Perez for battery (California Penal Code § 242) and engaging in a public fight (California Penal Code § 415(1)). *See* Mot. at 16; Reply at 6. The probable cause inquiry is informed by the elements of the criminal statute, although the arresting officer need not be able to prove each element of the crime in order to establish probable cause. *See Borunda*, 885 F.2d at 1389 (holding that "the state's failure to prove guilt beyond a reasonable doubt does not mean in connection with the arrests that it did not meet

the lesser probable cause standard—a reasonable belief that an offense has been committed and that the criminal defendant committed the crime.")

The criminal jury instructions for the crime of battery under California Penal Code § 242 provide that the government must prove that the defendant (1) willfully touched another person in a harmful or offensive manner; and (2) the defendant did not act in self-defense or in defense of someone else. *See* CALCRIM, Judicial Council of California Criminal Jury Instructions, Vol. 1 at 960 (Spring 2017). Engaging in a public fight in violation of § 415(1) requires the government to prove that (1) the defendant willfully fought or challenged someone else to fight; (2) in a public place when the fight occurred or the challenge was made; and (3) the defendant did not act in self-defense or in defense of someone else. *See* CALCRIM, Judicial Council of California Criminal Jury Instructions, Vol. 2 at 2688 (Spring 2017).

The Supreme Court has made clear that an arresting officer's state of mind, other than the facts that he knows, is irrelevant to the existence of probable cause. *Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S. Ct. 588, 593–94, 160 L. Ed. 2d 537 (2004) (citing *Whren v. United States*, 517 U.S. 806, 812-13). "That is to say, [the officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id.* Therefore, the Court may consider whether the objective facts demonstrate that Sergeant Eveleth had probable cause to arrest Perez for a violation of any of the criminal statutes cited by Defendants.

Although Perez does not raise this issue, the Court also notes that the offenses at issue are misdemeanors. Under California law, an officer may make a warrantless misdemeanor arrest only if he has reasonable cause to believe that a person has committed a misdemeanor in his presence. Cal. Penal Code § 836 (West); *see also Barry v. Fowler,* 902 F.2d 770, 772 (9th Cir. 1990). However, the Ninth Circuit has held that "[t]he requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment." *Id.* Therefore, Perez's section 1983 claim is not dependent on whether Sergeant Eveleth was present when Perez committed a misdemeanor, even if the arrest would violate state law. *Id.*; *see also United States v. Becerra-Garcia*, 397 F.3d 1167, 1173 (9th Cir. 2005) (recognizing the "well-established proposition that an arrest in violation of state law may still be

14

constitutionally reasonable.")  The crucial constitutional inquiry is whether Sergeant Eveleth had probable cause to make the arrest. *Barry*, 902 F.2d at 772 (citing *McKenzie v. Lamb*, 738 F.2d 1005, 1007).[3]

### ii.      Facts Known to Sergeant Eveleth at Time of Arrest

Turning to the facts of this case, the Court finds that the undisputed facts known to Sergeant Eveleth at the time of Perez's arrest gave rise to probable cause that Perez had violated California statutes criminalizing public intoxication and fighting in public.  The following facts were known to Sergeant Eveleth at the time that he arrested Perez:  Sergeant Eveleth was informed by dispatch at 1:55 A.M. on August 3, 2013 that a fight had broken out on Pacific Avenue and a firearm was present. *See* Eveleth Depo. 15:4-7; 17:16-23.  Dispatch further informed Sergeant Eveleth that "the report on the ground" was that three Hispanic males were beating up one white male on Pacific Avenue, and that one of the subjects had a gun. *See* Eveleth Decl. ¶ 3; Eveleth Depo. 19:8-16.  Once he arrived at the scene of the altercation, Sergeant Eveleth spoke to a witness, Griggs, who confirmed that the Hispanic male involved in the fight was wearing a white t-shirt, had a gun and was walking north on River Street. Eveleth Decl. ¶ 4; Eveleth Depo. 19:11-16.

Sergeant Eveleth followed Griggs' tip that the suspect with the firearm was heading north on River Street, and drove that direction until he saw a group of four subjects standing in and around the front yard at 232 River Street.  *See* Eveleth Decl. ¶ 6.  Sergeant Eveleth observed that Perez matched the description provided by Griggs: a Hispanic male wearing a white t-shirt who was "bleeding from the mouth" and had obviously been involved in a fight. *See* Eveleth Decl. ¶ 7; Perez Depo. 209:8-10.

Although there is some dispute as to where Perez was standing when Sergeant Eveleth first

---

[3] Moreover, because Perez does not raise the "in-the-presence" issue, the Court need not decide whether an arrest for a misdemeanor not committed in Sergeant Eveleth's presence violates the Fourth Amendment.  Yet the Ninth Circuit and every other circuit to have addressed the issue has indicated that the Fourth Amendment does not require an officer to be present to conduct a reasonable misdemeanor arrest without a warrant. *See, e.g.*, *Barry*, 902 F.2d at 772; *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Knight v. Jacobson*, 300 F.3d 1272, 1276 n.3 (11th Cir. 2002) (collecting cases).

pulled up to the residence, for purposes of summary judgment the Court accepts that Perez was "maybe two paces" into his brother's yard when the police arrived. *See* Perez Depo. 84:13-15. However, as discussed below, where Perez stood when the police arrived is not material to the probable cause determination. Perez's arrest for "public intoxication" could have pertained to his prior activity on Pacific Avenue, and Perez does not assert that Sergeant Eveleth violated his Fourth Amendment rights by unlawfully arresting him inside his own home. Further, Perez testified that as soon as he saw the police approach the residence he "decided to step out and let them do their investigation," conceding that he stepped outside of the gate surrounding the fenced-in yard prior to his detention and arrest. *See* Perez Depo. 84:15-21. There is no evidence that the police coerced Perez onto the sidewalk, but rather it is undisputed that he voluntarily stepped outside of the gate when he saw and heard the sirens. *Id.* In addition, where Perez was standing when the police arrived at the residence has no bearing on probable cause to arrest him for a battery or public fight that occurred on Pacific Avenue.

It is further undisputed that prior to his arrest, Perez identified himself as LAPD and informed Sergeant Eveleth that he had a firearm. Eveleth Depo. 38:21-24. After Perez was detained, but before the decision to arrest him was made, the loaded firearm was recovered from a search of Perez's person. *Id.* 45:17-46:5. The firearm was located in the front of Perez's pants. *Id.* 45:21-22. Importantly, even at his own deposition Perez does not dispute that he had blood on his lip, was involved in an altercation, and was carrying a loaded gun without a holster which dropped during the fight. *See, e.g.*, Perez Depo. 209:8-10; 215:7-12.

Prior to Perez's arrest by Sergeant Eveleth, Officer Guerrasio interviewed the witness, Griggs, at the scene. Griggs stated that Perez and two other Hispanic males were "beating the shit out of" a white man on Pacific Avenue. *See* Bronson Decl. Exh. I ("Griggs Interview") 2:9-13, ECF 55-2. Griggs' statements indicated that Perez was the aggressor in the fight and that he "was attempting to beat an apology" out of the other person involved. Eveleth Decl. ¶ 15. According to Griggs, Perez told the white man to "apologize" for "talking shit." *Id.* 5:2-5. Griggs recalled that Chaidez was telling Perez to "give me the gat, give me the gat," referring to Perez's firearm. *Id.* 2:17-19. Perez then "pretended" to give Chaidez the firearm, but Griggs saw that Perez kept the

16

gun. *Id*. 9:13-14.  Griggs also independently confirmed that the firearm was located in the front of Perez's pants. *Id.* 9:1-10.  Griggs added that, "[i]f it had been a fair fight, I probably wouldn't have called anybody." *Id*. 4:17-19.  Although Griggs made these statements directly to Officer Guerrasio, it is undisputed that Guerrasio communicated this information to Sergeant Eveleth. *See* Eveleth Depo. 98:9-20.  Eveleth testified that before he interviewed and decided to arrest Perez, he was aware of the contents of Griggs' on-scene interview, as described above. *See* Declaration of Mark Eveleth ISO Reply ("Eveleth Reply Decl.") ¶ 3, ECF 49.  Eveleth was also aware that Griggs was intoxicated.  *See* Eveleth Decl. ¶ 16.

Meanwhile, Perez's girlfriend Chaidez spoke to Officer Cockrum in an interview at the scene and stated that although the white male had started the fight, Perez eventually had the man "in a neck hold." *See* Bronson Decl. Exh. K ("Chaidez Interview") 6:23-7:4, ECF 55-4. According to Chaidez, the white male came up to them and "cold clock[ed]" Miguel in the face. *Id*. 3:4-8; 6:7-8.  Perez then got involved to "separate the fight." *Id*. 3:14-15.  At some point during the fight, Perez's gun fell out of his belt. *Id*. 3:25-4:1.  Chaidez recalled in her interview that Perez had the white male in a "cop hold" around the neck, saying "are you gonna stop?" and the man said "yes, I'll stop." *Id*. 6:23-7:7.  Chaidez also stated that the group, including Perez, "started drinking at, like, 7 or something." *Id*. 7:21-22.  Specifically, Chaidez told Officer Cockrum that Perez had "probably like two beers." *Id*. 8:14-16.  Again, the undisputed evidence is that Sergeant Eveleth was aware of the contents of these statements by Chaidez to Officer Cockrum, prior to making his decision to arrest Perez. *See* Eveleth Depo. 98:9-20; Eveleth Reply Decl. ¶ 5.

Unlike the statements from Griggs and Chaidez, which Sergeant Eveleth became aware of prior to arresting Perez, the evidence clearly shows that Perez's own interview occurred after he was placed under arrest. *See* Bronson Decl. Exh. J ("Perez Interview") ECF 55-3.  Sergeant Eveleth does not believe that any officer, including Eveleth himself, initially asked Perez any questions to elicit a statement about what happened. *See* Eveleth Depo. 45:1-4; 12-17.  Rather, Perez was brought up from his knees and taken across the street where he sat down on a curb, handcuffed. *Id*. 45:17-20; Perez Depo. 209:2-5; 20-22.  After Perez was detained and searched, and after Sergeant Eveleth had conferred with the other officers at the scene, Sergeant Eveleth

approached Perez to conduct an interview. Eveleth started by stating: "obviously you're in handcuffs," and "it's safe for you to assume that you're under arrest." Perez Interview 2:6-10. He read Perez his *Miranda* rights and then explained: "Right now you're under arrest for public intoxication." *Id.* 3:2-3. At that point Sergeant Eveleth had clearly already made the decision to arrest Perez, and therefore any statements made by Perez after that point are not appropriately factored into the Court's probable cause analysis. "The determination whether there was probable cause is based upon the information the officer had *at the time of making the arrest*. It is essential to avoid hindsight analysis, *i.e.*, to consider additional facts that became known only *after the arrest was made*." *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008) (emphasis added); *accord Grant v. City of Long Beach*, 315 F.3d 1081, 1089 (9th Cir. 2002) (existence of probable cause is measured "at the moment the arrest was made.")

Based on the facts and circumstances that were within Sergeant Eveleth's knowledge at the time of the arrest, which did not include Perez's post-arrest interview statements, the Court finds that a reasonably prudent person would believe that Perez had committed a crime—either public intoxication (§ 647(f)) or fighting in public (§ 415(1)). *See Barry*, 902 F.2d at 773 (holding that probable cause requires that the "facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe that the suspect has committed…an offense"). As explained further below regarding fighting in public, even though Sergeant Eveleth was aware of Chaidez's statements that Perez was defending his brother Miguel who had been attacked first, "[t]he mere existence of some evidence that could suggest self-defense does not negate probable cause." *Yousefian*, 779 F.3d at 1014.

The Court notes however, that it is disputed whether Sergeant Eveleth had probable cause to arrest Perez for battery—a willful touching of another person in a harmful or offensive manner—in violation of § 242. Eveleth testified in his deposition that it would have been difficult for him to determine at the scene whether Perez was actually the victim of battery, and that based on Griggs' witness statement it seemed more likely that Perez was the aggressor who committed a battery, or at the very least was "involved in a mutual combat." Eveleth Depo. 58:9-18. Eveleth then concedes that determining who was actually the victim of the battery "would have been

beyond our ability, probably, to follow up on or try and really determine." *Id.* 58:21-23. The Court therefore focuses its analysis on whether the facts known to Sergeant Eveleth gave rise to probable cause for public intoxication and public fighting.

The Court finds that Defendants have satisfied their moving burden, and the burden then shifts to Perez to produce evidence to show a genuine issue of material fact in order to survive summary judgment. *Celotex*, 477 U.S. at 323. Perez does not point to any evidence in the record to contradict any of the facts above in order to satisfy his burden on summary judgment. Instead, Perez runs through each element of § 647(f) to argue that there was no probable cause to arrest Perez for public intoxication *at the time of his arrest.* See Opp'n at 11. Perez initially ignored the other criminal statutes discussed above, but after the hearing on Defendants' motion the Court ordered supplemental briefing on whether probable cause existed to arrest Perez for battery or fighting in public because the law is clear that probable cause may exist under "some specific criminal statute" even if the statute is not the officer's stated reason for the arrest. *Edgerly v. City & Cty. of San Francisco*, 599 F.3d 946, 954 (9th Cir. 2010). Thus, the Court can consider whether probable cause existed to arrest Perez for violations other than the crime he was ultimately arrested for. *See, e.g.*, *Rosenbaum*, 663 F.3d at 1077. The Court first addresses probable cause for the criminal statute that Perez was arrested for—public intoxication—and then considers fighting in public.

### iii.    Public Intoxication

California Penal Code § 647(f) makes it a misdemeanor for an individual to be (1) intoxicated; (2) in a public place; and (3) unable to exercise care for his safety or the safety of others. Cal. Pen. Code § 647(f). Perez argues that summary judgment should be denied because a reasonable jury could conclude that probable cause to arrest Perez for public intoxication was lacking. *See* Opp'n at 10. He argues that triable issues of fact exist with respect to each element. The Court disagrees, and finds that the undisputed totality of circumstances known to Sergeant Eveleth would lead a prudent person to conclude that there was a fair probability that Perez had violated § 647(f). Therefore, no reasonable jury could conclude that there was no probable cause for the arrest.

With respect to whether Perez was intoxicated, Sergeant Eveleth testified that Perez "swayed back and forth" while he was moving backwards on his knees as instructed, which demonstrated a "balance and coordination issue." *See* Eveleth Depo. 71:1-3; 73:3-6; 92:7-12. Perez attempts to defeat summary judgment by arguing that the officers did not conduct a sobriety test, and that Perez's "unsteady walking" as observed by Eveleth was due to the fact that Perez was wearing shorts and his bare knees were exposed. *See* Opp'n at 12. The evidence from the police report confirms that Perez told Eveleth that his knees hurt, and that Sergeant Eveleth took that fact into account. *Id*. 74:1-10; 95:10-15 ("Perez had difficulty maintaining his balance while doing this. I noted that Perez was wearing shorts, and he said his knees hurt. But his issues with balance seemed more likely caused by his level of intoxication.") While an officer "may not ignore exculpatory evidence that would negate a finding of probable cause," there is no evidence that Sergeant Eveleth ignored Perez's statement that his knees hurt. *See Yousefian*, 779 F.3d at 1014. Rather, Eveleth documented Perez's statement in his report but credited other evidence that made intoxication the more likely explanation.

In making the determination that Perez was intoxicated, Eveleth testified that he observed that Perez smelled like alcohol, and he also "listened to things that people told me about what had occurred." *Id*. 91:13-92:1.[4] Sergeant Eveleth testified that he received information from Officers Guerrasio and Cockrum who had been interviewing Griggs and Chaidez, respectively, and took the information from those reports into account in determining that Perez was intoxicated. *Id*. 98:1-20. Specifically, Chaidez confirmed that Perez had been drinking since 7 P.M. and had "probably two beers." Chaidez Interview 7:21-22; 8:14-16.

Perez further argues that he was not in a public place at the time of the arrest, referring to the fenced area of his brother's yard at 232 River Street. *See* Opp'n at 11. The Court credits, as it must, that Perez was "two paces" into his brother's yard when the police arrived. *See* Perez Depo. 84:13-15. But Perez's own testimony shows that although he may have been inside the yard when

---

[4] The Court agrees with Perez that whether Perez was "slurring" at the time of the incident is disputed. As such, the Court does not take the fact that Perez slurred his speech into account in its probable cause analysis.

he heard sirens, he "stepped out" of the gate surrounding the yard to let the officers do their investigation, without being asked to do so by Sergeant Eveleth. *See* Perez Depo. 83:7-84:24.

This is not a case where a resident gets drunk at a backyard barbecue and is arrested by the police. It is not disputed that Perez started drinking at 7 p.m. in downtown Santa Cruz and that he had recently walked through public streets, engaging in an altercation on Pacific Avenue and then walked down a public street to Miguel's residence. *See, e.g.*, Chaidez Interview 8:3-18. Perez does not argue that Sergeant Eveleth violated his Fourth Amendment rights by unlawfully searching or seizing him in a private place, and thus the Court need not determine whether the yard is a "public place" from a constitutional standpoint. Perez argues solely that the "public" element of public intoxication was not "met" under the statute because he stood in the yard when the police arrived, before he "stepped out" on his own volition. Perez's characterization of the law also ignores the difference between the required standard for probable cause to arrest, which considers the totality of circumstances, and the requirement that a conviction be supported by proving each element of a crime beyond a reasonable doubt. While a jury may have ultimately exonerated Perez in a criminal trial on the grounds that he was not in "public," no reasonable jury could conclude that probable cause to arrest was lacking under these circumstances based solely on the fact that Perez stood "two paces" inside the yard when the police first arrived.

As for the final element, it is undisputed that Sergeant Eveleth was aware of facts supporting a determination that Perez was unable to exercise care for his safety or the safety of others. Perez does not dispute that he had been drinking and was carrying a loaded gun without a holster that had fallen out of his waistband during the fistfight on Pacific Avenue. Prior to arresting Perez, Sergeant Eveleth was aware of this information from the witness statements of Griggs and Chaidez, and from his own observations that Perez was bleeding from the lip, was exhibiting signs of intoxication, and had a loaded gun in his waistband without a holster. Griggs had informed the officers that Perez was "beating the shit" out of a white male, when the unsecured, loaded gun fell from his shorts to the ground. Chaidez stated that although the white male started the fight by punching Miguel, when Perez got involved to "separate the fight" and put the attacker in a neck hold, his gun fell to the ground. Whichever version of the story Sergeant

Eveleth credited would support a reasonable determination that Perez was unable to exercise care for his safety or the safety of others.

Perez does not dispute that any of these facts were known to Sergeant Eveleth, but argues that a material dispute of fact exists for trial because Perez was fully compliant with the officers when they arrived at 232 River Street, and he even told the other subjects to be cooperative. *See* Opp'n at 13 (citing Perez Depo. 83:5-84:24). Evidence that Perez cooperated with the police is not equivalent to evidence that the officers disregarded the fact that Perez was cooperative, as Perez suggests. Probable cause can still exist where a suspect cooperates with an investigation, and even when the suspect makes exculpatory statements. *Yousefian*, 779 F.3d at 1014. Perez cites to no authority to the contrary.

The undisputed evidence makes clear that Sergeant Eveleth was aware of ample facts that the individual standing before him had been drinking in a public place, and engaged in a fight on a public street where he was unable to protect the loaded gun he was carrying in his waistband. The Court therefore agrees with Defendants that "[i]t is not subject to reasonable dispute that a person who drinks alcohol, gets in a public fist fight, drops his loaded gun, and carries an unsecured loaded firearm in his shorts," is appropriately deemed to be unable to exercise care for his safety or the safety of others within the meaning of § 647(f). *See* Mot. at 14. Even viewing the evidence in the light most favorable to Perez, a jury could not reasonably have concluded that probable cause to arrest Perez for public intoxication was lacking.

The Court briefly addresses Perez's argument that Griggs was not a reliable witness and that his statements cannot support probable cause because the officers knew that Griggs was intoxicated. *See* Opp'n at 14. The Court recognizes that in the transcript of Griggs' 911 call, he told the operator that he was intoxicated. *See* Bronson Decl. Exh. H, 2:22-24, ECF 55-1. Sergeant Eveleth was also aware that Griggs was intoxicated on the night in question. *See* Eveleth Dec. ¶ 16. Perez argues that the statements from Griggs cannot establish probable cause, because the officers must independently investigate the basis of the witness's knowledge or interview other witnesses. *Peng v. Mei Chin Penghu*, 335 F.2d 970, 976-77 (9th Cir. 2003). Perez states that "it is well-settled that officers may not solely rely on the claim of a citizen witness that he was a

victim or observer of a crime, but must independently investigate the basis of the witness's knowledge or interview other witnesses." *Id.*  In support of this contention, Perez liberally cites to *Peng v. Mei Chin Penghu*, which dealt only with a witness who is a *victim* of a crime, not an observer. 335 F.3d 970, 978 (9th Cir. 2003).  In fact, the victim in *Peng* was deemed to have provided sufficiently detailed facts regarding the incident in question, and the Ninth Circuit found that *probable cause existed* and there was no violation of the Fourth Amendment. *Id.* at 980.

Here, it is undisputed that Griggs was a bystander, not a victim, who witnessed the altercation on Pacific Avenue and was startled when Perez's firearm dropped to the ground during the fight.  Thus, the reliability of his statements to the officers is not called into question on the basis of his involvement or interest in the matter.  Moreover, Griggs did not provide an uncorroborated statement of the events, he provided extremely detailed facts regarding the incident that allowed Sergeant Eveleth to locate Perez on River Street, identify him based on his bloody lip and white t-shirt, and recover his loaded firearm from his waistband.  Once Sergeant Eveleth corroborated these facts, it is similarly immaterial to a probable cause analysis that Griggs was intoxicated when he called 911 and informed the police of the fight.  Moreover, there is no evidence that Sergeant Eveleth disregarded Griggs' intoxication.

Perez also argues, without authority, that the fact that the public intoxication charge against him was subsequently dismissed demonstrates the absence of probable cause to arrest him. *See* Opp'n at 15.  The Court rejects this argument, as the law is clear that "the mere fact a prosecution was unsuccessful does not mean it was not supported by probable cause." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995), *as amended on denial of reh'g and reh'g en banc* (Dec. 29, 1995); *accord Borunda*, 885 F.2d at 1389.

For the foregoing reasons, Defendants' motion for summary judgment on the unlawful arrest claim against Sergeant Eveleth is GRANTED.

### iv.    Fighting in Public

Although the Court finds that summary judgment is appropriate on the unlawful arrest claim because it is undisputed that probable cause existed to arrest Perez for public intoxication, Sergeant Eveleth is also entitled to qualified immunity on the separate ground that he had probable

cause to arrest Perez for engaging in a public fight. The Court ordered supplemental briefing on whether probable cause existed to arrest Perez for this crime, which he was not actually arrested for. *See* ECF 57. Perez concedes that the Court may consider whether probable cause exists for a "would be" arrest for public fighting, but he argues that the record does not support granting summary judgment on this basis because "disputed factual issues" regarding the circumstances of Perez's involvement in the fight require a probable cause determination by a jury. *See generally* Supplemental Opposition ("Supp. Opp'n"), ECF 58.

An individual violates California Penal Code § 415(1) by "unlawfully fighting, or challenging another person to fight, in a public place." The elements of the crime include that (1) the defendant willfully fought or challenged someone else to fight; (2) in a public place when the fight occurred or the challenge was made; and (3) the defendant did not act in self-defense or in defense of someone else. *See* CALCRIM, Judicial Council of California Criminal Jury Instructions, Vol. 2 at 2688 (Spring 2017). Perez argues that probable cause did not exist to arrest him for fighting in public because Sergeant Eveleth was aware of evidence that the white male started the fight by punching Miguel, and Perez's involvement in the altercation was only to stop the assailant from further attacking his brother. *See* Supp. Opp'n at 3.

At the time of the arrest, Sergeant Eveleth was aware of Chaidez's interview statements that the white male had attacked Miguel first, and Perez had gotten involved to "separate the fight." *See* Eveleth Reply Decl. ¶ 5. Chaidez also indicated that Perez put the attacker in a "neck hold" and told him to stop. *Id.* Sergeant Eveleth was also aware of Griggs' account of the altercation, which painted Perez as the aggressor in the fight who was "beating the shit" out of the white male in an attempt to beat an apology out of him. Eveleth Reply Decl. ¶ 3; Eveleth Decl. ¶ 15.[5] Even if Sergeant Eveleth determined from this information that Perez's initial separation of the fight was in defense of his brother, the evidence that Perez put the other individual in a neck hold in an attempt to get an apology out of him, and was described by Griggs as "beating the shit" out of him, actually goes beyond the scope of defense of others.

---

[5] Again, Perez's interview statements are not properly factored into the probable cause analysis, as they came after Sergeant Eveleth had informed Perez that he was under arrest.

The mere existence of evidence that Perez acted in defense of his brother does not negate probable cause, which takes into account the totality of the circumstances known to the arresting officer. *See Yousefian*, 779 F.3d at 1015. In *Yousefian*, the plaintiff called the police to report that he had been attacked by his father-in-law at his home. *Id*. at 1012. When the police arrived at the scene, an elderly man was lying on the floor and bleeding profusely from a wound to the head, which all witnesses agreed was the result of plaintiff striking the elderly man in the head with a glass candleholder. *Id*. The plaintiff claimed that he only did so to defend himself after being provoked by his father-in-law who hit him with his cane. *Id*. When the plaintiff later challenged the officer's probable cause to arrest him for assault and elder abuse, the Ninth Circuit held that summary judgment for the officer was appropriate because no jury could find that probable cause to arrest was lacking under these circumstances. *Id*. at 1014-15. The plaintiff pointed to evidence that he had been the one to call the police and tell them that he was acting in self-defense. There was no evidence that the officer ignored these exculpatory facts, only that the officer simply believed the other witnesses' accounts of the incident to be more credible. *Id*. at 1014. The Ninth Circuit concluded that "[h]ere, notwithstanding the self-defense claim, a jury could not reasonably have concluded that the facts known to [the officer] were insufficient to establish probable cause." *Id*.

The Court acknowledges that the facts in *Yousefian* are extreme, especially in light of facts that the defendant officer later engaged in a sexual relationship with the plaintiff's wife, but the premise of law on probable cause remains sound. In light of this law, the Court is not persuaded that an officer's awareness of a potential self-defense or defense of others claim prevents the officer from finding other evidence to be more credible and giving rise to probable cause. Moreover, once probable cause to arrest someone is established, a law enforcement officer is not "required by the Constitution to investigate independently every claim of innocence." *Broam*, 320 F.3d at 1032. Sergeant Eveleth's probable cause determination is therefore not negated by any facts that came to light after the arrest was made.

Perez does not point to any *evidence* that Sergeant Eveleth conducted a reckless investigation or ignored exculpatory evidence that would negate probable cause. Rather he argues

25

that Sergeant Eveleth's awareness of evidence that Perez was defending his brother somehow automatically eliminates probable cause to arrest him for fighting in public. The undisputed evidence makes clear that Sergeant Eveleth considered the circumstances and witness statements and determined that at the very least, Perez had been involved in a "mutual combat." *See* Eveleth Depo. 58:9-18. Moreover, undisputed evidence that Perez did not wait at the scene of the fight for the police to arrive further discredits a "self-defense" or "defense of others" claim.

Considering the totality of the circumstances known to Sergeant Eveleth, and viewing such circumstances in the light most favorable to Perez, a prudent person would believe that Perez had engaged in a public fight at the time he was arrested. Sergeant Eveleth's awareness of evidence that the other individual had instigated the fight by punching Miguel does not negate probable cause. As such, no reasonable jury could find that Sergeant Eveleth violated Perez's Fourth Amendment rights.

### v. "Reasonably Arguable" that Probable Cause Exists

Because the Court finds that the undisputed evidence shows that Sergeant Eveleth had probable cause to arrest Perez for either public intoxication or fighting in public, there was no constitutional violation and the Court need not address the second prong of qualified immunity. *See Nelson v. City of Davis*, 685 F.3d 867, 875 (9th Cir. 2012) (holding that in order "[t]o survive the defendant's invocation of qualified immunity, the plaintiff must succeed on both prongs.")

However, the Court notes that even if a constitutional violation occurred, it must be *clear* that the conduct is unlawful: "qualified immunity will attach whenever reasonable officers could disagree about whether the facts in the particular case give rise to probable cause." *Rosenbaum*, 633 F.3d at 1078 n.2. "The purpose of qualified immunity is to ensure that officers are given fair notice of the law that they are required to uphold." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). It seems likely that Defendants would be entitled to summary judgment under the second prong of qualified immunity as well, as reasonably competent officers under the circumstances could disagree with respect to whether Perez had committed a crime. Thus, even viewed in the light most favorable to Perez, given the undisputed facts known to Sergeant Eveleth, it appears "reasonably arguable" that there was probable cause to believe that Perez had violated either

§ 647(f) or § 415(1).

## B.     Fourteenth Amendment

Perez's second cause of action for a violation of his Fourteenth Amendment rights has changed dramatically from the original complaint. Initially, Perez brought an equal protection claim against the Officer Defendants, claiming that they had intentionally discriminated against him based on his race. *See* Compl. ¶¶ 52-59. Perez confirmed at the November 16, 2017 hearing that he wishes to dismiss the intentional racial discrimination claim. Defendants' motion for summary judgment is therefore GRANTED as to Perez's § 1983 claim for a violation of the Fourteenth Amendment's Equal Protection Clause based on intentional racial discrimination.

In his opposition to Defendants' summary judgment motion, Perez indicates for the first time that his Fourteenth Amendment cause of action is now a due process claim. *See* Opp'n at 3. Perez argues that the Officer Defendants made false statements in their police report in order to manufacture probable cause, which resulted in Perez's suspension and discharge from the LAPD, depriving him of his due process rights. Defendants argue that this brand new theory, which is a distinct cause of action from the claim pled in the Complaint and is based on a separate clause of the Fourteenth Amendment, should not be allowed to proceed to trial.

The Court acknowledges that the original Complaint contained allegations related to a false police report. *See* Compl. ¶ 36 ("The police reports and documents supporting the arrest were false.") However, the facts pertaining to fabricated statements in the police report were alleged in the context of a claim for intentional racial discrimination. There is no indication from the Complaint that Perez intended to proceed on a due process theory. Thus, Perez's claim that the false statements in the police report were disseminated to his superiors at the LAPD and led to the deprivation of his due process rights, is not currently pled in the Complaint and is not before the Court.

As it stands, Perez has abandoned his equal protection claim and no due process claim is currently before the Court. Defendants' motion for summary judgment is therefore GRANTED with respect to Perez's second cause of action for a Fourteenth Amendment violation against the Officer Defendants.

**IV. ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment with respect to all claims against the City is GRANTED;

2. Defendants' motion for summary judgment with respect to the third and fourth causes of action, for alleged violation of Perez's First Amendment rights and for intentional infliction of emotional distress, is GRANTED as to all Defendants;

3. Defendants' motion for summary judgment with respect to Perez's first cause of action for unlawful detention and unlawful arrest is GRANTED as to all Defendants;

4. Defendants' motion for summary judgment is GRANTED with respect to the second cause of action for a Fourteenth Amendment equal protection/intentional discrimination violation as to all Defendants.

5. Although summary judgment has been granted on all claims presently before the Court, Plaintiff indicated at the hearing that he was considering seeking leave to amend the Complaint to allege a due process claim. No such motion has yet been filed. The Court will withhold entering judgment until **December 15, 2017.**

Dated: December 5, 2017

BETH LABSON FREEMAN
United States District Judge